COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| FIREMAN'S FUND INSURANCE COMPANY, | § | No. 08-06-00170-CV |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | 162nd  District Court |
| | § | |
| WELDON WEEKS, | § | of Dallas County, Texas |
| | § | |
| Appellee. | § | (TC# 04-10160-I) |
| | § | |

## **O P I N I O N**

The opinion of the Court issued December 20, 2007 is withdrawn, and the following is the opinion of the Court.

Appellant, Fireman's Fund Insurance Company ("Fireman's Fund"), appeals the district court's judgment in favor of workers' compensation claimant, Weldon Weeks, the Appellee herein. Fireman's Fund contends that the evidence relied upon by the district court regarding Appellee's impairment rating and date of maximum medical improvement is legally insufficient.  For the following reasons, we reverse the judgment of the trial court and render judgment for Fireman's Fund.

## **BACKGROUND**

On August 20, 1999, Weeks, who was employed by WW Rogers Produce, suffered an on-the-job injury, when he fell from a forklift and injured his lower back.  On August 25, Weeks visited Dr. Huntly Chapman regarding the injury.  Dr. Chapman initially prescribed medicine and therapy for him, but Weeks continued to experience pain in his back.  On June 13, 2001, Dr. Chapman

performed a spinal fusion surgery on Weeks, fusing his L3-4 and L4-5 vertebrae. Following the surgery, Weeks continued to experience back pain.

On December 14, 2001, Weeks was examined by Dr. Donald Mauldin, who was selected by Fireman's Fund. Dr. Mauldin reported that Weeks reached Maximum Medical Improvement ("MMI") on December 14, 2001. According to Dr. Mauldin, Weeks had an impairment rating of 20 percent. At the request of Fireman's Fund, Dr. Phillip Osborne conducted a peer review of Dr. Mauldin's report. Dr. Osborne concurred with Dr. Mauldin's impairment rating. Dr. Osborne concluded that "this rating follows The Guides[1] and I do not believe that you will be successful disputing it."

The Division of Workers' Compensation of the Texas Department of Insurance[2] subsequently appointed Dr. Wright Singleton as designated doctor to examine Weeks. On March 7, 2002, Singleton examined Weeks and determined that Weeks had an MMI date of January 28, 2002, and an impairment rating of 10 percent. In making this determination, Dr. Singleton categorized Weeks's injury as a Diagnosis-Related Estimate ("DRE") category III injury, because Weeks showed some signs of lumbar radiculopathy.

Dr. Chapman disputed Dr. Singleton's conclusions. On October 14, 2002, Dr. Chapman performed an evaluation on Weeks and concluded that Weeks's MMI date was April 17, 2002, based on the 104-week limitation contained in the definition of MMI. *See* TEX. LAB. CODE ANN. §

---

[1] The American Medical Association publication entitled "Guides to the Evaluation of Permanent Impairment" is popularly referred to as the "*AMA Guides*" or simply the "*Guides*." *Cf.* 28 TEX. ADMIN. CODE § 130.1(c)(2)(B)(i) (Tex. Dep't of Ins., Div. of Workers' Comp., Impairment and Supplemental Income Benefits).

[2] The Texas Workers' Compensation Commission was the agency formerly charged with administration of the Texas Workers' Compensation Act. The legislature abolished the Commission on September 1, 2005, and transferred its responsibilities to the Texas Department of Insurance, Division of Workers' Compensation. Act of May 29, 2005, 79th Leg., R.S., ch. 265, §§ 8.001(b), 8.004(a), 2005 Tex. Gen. Laws 469, 607-08. The term "Division" is used herein to refer to both the former Commission and the Division of Workers' Compensation.

401.011(30)(B). Dr. Chapman also concluded that Weeks's injury was properly categorized as DRE category V, due to the fact that Weeks had undergone spinal fusion surgery and because of the presence of radiculopathy. Based on this, Dr. Chapman assigned Weeks an impairment rating of 25 percent.

Dr. Singleton stood by his decision. He explained that, under the *AMA Guides*, it would be inappropriate to consider the presence of a spinal fusion alone in determining impairment. Dr. Singleton re-examined Weeks on April 21, 2004, and again rated him at 10 percent impairment, with an MMI date of January 28, 2002.

On March 25, 2004, the Division held a contested case hearing to determine, among other things, the date of MMI and Weeks's impairment rating. The hearing officer noted that "[t]he differences between Dr. Singleton's certification and those of the other doctors are in the area of medical judgment. Specifically, Dr. Singleton did not use the multilevel fusion to place Claimant in a higher DRE category for loss of motion segment integrity, whereas the other doctors did." The hearing officer concluded, in agreement with Dr. Singleton, that Weeks had an MMI date of January 28, 2002, and an impairment rating of 10 percent.[3] Weeks appealed this decision to the Division's Appeals Panel, which did not issue a decision within the time permitted by the Texas Labor Code. The hearing officer's decision therefore became the final decision of the Appeals Panel. *See* TEX. LAB. CODE ANN. § 410.204(c).

Weeks then appealed to the 162nd District Court, which conducted a bench trial in November of 2005, to determine Weeks's MMI date and impairment rating. The district court entered a final

---

[3] The Division's hearing officer also determined that the Division's appointment of Dr. Lawrence Reid as a second designated doctor was improper. Weeks stipulated at trial that this decision was not at issue and that he was not challenging it. The district court's final judgment recites that "Plaintiff waived the issue of whether Dr. Lawrence Reid was properly appointed as a Designated Doctor." Therefore, Dr. Reid's report is not at issue in this appeal. Moreover, Dr. Reid's report suffers from the same defect as that of Dr. Chapman's reports, discussed below.

judgment on February 2, 2006, ruling that Weeks had an MMI date of April 17, 2002, and an impairment rating of 25 percent. Fireman's Fund appeals the district court's judgment, arguing that the evidence relied upon was legally insufficient, because the reports of Drs. Chapman, Mauldin, and Reid impermissibly relied upon the fact that Weeks had undergone spinal fusion surgery in determining his impairment rating. Fireman's Fund also argues that, because the evidence in support of the impairment rating adopted by the district court was legally insufficient, its MMI date is legally insufficient as well. Fireman's Fund asks this Court to reverse the district court's judgment and render judgment that Weeks has a 10 percent impairment rating, with a January 28, 2002, MMI date.

## DISCUSSION

### A. Standard of Review

The Division's decision on issues involving compensability of the injury and eligibility for and the amount of income and death benefits is reviewed by the district court under a modified *de novo* review. *Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 515 (Tex. 1995); *Financial Ins. Co. v. Ragsdale*, 166 S.W.3d 922, 928 (Tex. App.--El Paso 2005, no pet.). The party which appeals bears the burden of proof by a preponderance of the evidence. TEX. LAB. CODE ANN. § 410.303. When a court is the trier of fact, it is to consider the decision of the Division's Appeals Panel. *Id.* § 410.304(b). However, the court is not required to accord the Division's decision any particular weight. *Id.* § 410.304(a). In addition, the opinion of the designated doctor regarding impairment is accorded no special weight. *Ragsdale*, 166 S.W.3d at 928. In determining the extent of impairment, however, the trier of fact must adopt the specific rating of one of the physicians in the case. *Id.* § 410.306(c). Unless the court makes a threshold finding that the claimant's condition has substantially changed, evidence of the extent of impairment is limited to the evidence that was presented to the Division. *Id.* §§ 410.306(c), 410.307.

When the trial court is the trier of fact, a legal sufficiency challenge to the trial court's findings of fact is reviewed under the same standard that is applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *In re Expunction of J.A.*, 186 S.W.3d 592, 595 (Tex. App.--El Paso 2006, no pet.). A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact finding. *Serrano v. Union Planters Bank, N.A.*, 162 S.W.3d 576, 579 (Tex. App.--El Paso 2004, pet. denied). When the party with the burden of proof suffers an unfavorable finding, the point of error challenging the legal sufficiency of the evidence should be that the fact or issue was established as "a matter of law." *Id.* When the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to support the finding." *Id.* A legal sufficiency or "no evidence" challenge will be sustained on appeal, if the record shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Carrasco v. Stewart*, 224 S.W.3d 363, 367 (Tex. App.--El Paso 2006, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005)).

In reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the judgment, crediting favorable evidence if a reasonable juror could and disregarding contrary evidence, if a reasonable juror could not. *City of Keller*, 168 S.W.3d at 807. We are to consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *Id.* at 822. However, if the evidence allows of only one inference, the trier of fact may not disregard it. *Id.* When a "no-evidence" point of error rests on the competency of the evidence, we may not disregard contrary evidence showing it to be incompetent. *Id.* at 812.

## B. Requirements for Impairment Ratings

The Texas Workers' Compensation Act (the "Act") authorizes four types of income benefits: (1) temporary income benefits; (2) impairment income benefits; (3) supplemental income benefits; and (4) lifetime income benefits. *See Garcia*, 893 S.W.2d at 513. An employee's entitlement to impairment benefits begins the day after the employee reaches MMI. TEX. LAB. CODE ANN. § 408.121. MMI is defined as the earlier of "the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated" or "the expiration of 104 weeks from the date on which income benefits begin to accrue." TEX. LAB. CODE ANN. § 401.011(30).[4] In order to obtain impairment benefits, an employee must be certified by a doctor as having reached MMI and must be assigned an impairment rating by a certifying doctor. *Id.* at § 408.123(a). An impairment rating is defined as "the percentage of permanent impairment of the whole body resulting from the current compensable injury." 28 TEX. ADMIN. CODE § 130.1(c)(1) (Tex. Dep't of Ins., Impairment Income Benefits). Certification of MMI and assignment of an impairment rating are to be contained in a signed Report of Medical Examination by the doctor. *Id.* at § 130.1(d).

Section 408.124(a) of the Labor Code provides that "[a]n award of an impairment income benefit . . . must be based on an impairment rating determined using the impairment rating guidelines described by this section." TEX. LAB. CODE ANN. § 408.124(a); *see* 28 TEX. ADMIN. CODE § 130.1(c)(2) ("A doctor who certifies that an injured employee has reached MMI shall assign an impairment rating for the current compensable injury using the rating criteria contained in the appropriate edition of the AMA Guides . . . ."); *see also Garcia*, 893 S.W.2d at 526 (the Act

---

[4] The date of maximum medical improvement may also be determined pursuant to Labor Code § 408.104(a), which provides for extensions in cases of spinal surgery. However, there is no evidence in the record that such an extension was sought or granted in this case.

"specifically requires all determinations of impairment to be made under the *Guides*"). The parties agree that the fourth edition of the *AMA Guides* is applicable to this proceeding. *See* TEX. LAB. CODE ANN. § 408.124(c), as implemented pursuant to 28 TEX. ADMIN. CODE § 130.1(c)(2)(B)(i); *cf. Texas Dep't of Ins. v. Lumbermens Mut. Cas. Co.*, 212 S.W.3d 870, 872 (Tex. App.--Austin 2006, pet. denied).

"The principal methodology found in the fourth edition of the *Guides* is its injury model, which uses objectively verifiable evidence to place patients into one of eight diagnosis-related estimate (DRE) categories." *Lumbermens Mut.*, 212 S.W.3d at 872. Under the injury model, an examining doctor uses medical history, physical examination, and other medical data to determine the appropriate impairment category. The *Guides* also permits the use of certain differentiators, if necessary, in order to place the patient in the proper impairment category.

In order for a lumbosacral spine injury to be categorized as DRE category IV, the *Guides* requires that the claimant have suffered either a loss of motion segment integrity or a structural inclusion. *Id.* According to the *Guides*, "[l]oss of motion segment or structural integrity is defined as abnormal back-and-forth motion (translation) or abnormal angular motion of a motion segment with respect to an adjacent motion segment."[5] A loss of motion segment integrity can be established with x-rays that show a translation of at least 5mm for one vertebra on another in the lumber spine or a difference in the angular motion of two adjacent motion segments greater than 11 degrees in response to spine flexion and extension. *Id.* at 872-73. Alternatively, the existence of a structural inclusion may justify a determination of DRE category IV. "The structural inclusions for the DRE IV category for the lumbosacral spine are: '(1) Greater than 50% compression of one vertebral body

---

[5] The *Guides* defines a motion segment of the spine as "two adjacent vertebrae, an intercalated disk, and the vertebral facet joints."

without residual neurologic compromise; [and] (2) multilevel spine segment structural compromise, as with fractures or dislocations, without residual neurologic motor compromise.'" *Id.* at 873.

Surgery is not a factor to be considered in determining impairment ratings under the Injury Model. As the *Guides* states, "[w]ith the Injury Model, surgery to treat an impairment does not modify the original impairment estimate, which remains the same in spite of any changes in signs or symptoms that may follow the surgery and irrespective of whether the patient has a favorable or unfavorable response to treatment."

In *Lumbermens Mut.*, the Austin Court of Appeals affirmed a district court declaration that certain Division advisories regarding impairment rating methods for spinal fusion recipients constituted an invalid attempt by the Division at ad hoc rulemaking and that the application of the advisories was an ultra vires act by the Division. *Lumbermens Mut.*, 212 S.W.3d at 875. Specifically, Advisories 2003-10 and 2003-10B provided that, in the absence of preoperative x-ray tests for motion segment integrity, a multilevel fusion met the criteria for DRE Category IV.[6] The court explained:

> [U]nder the injury model of the *Guides*, doctors may not use their medical judgment or experience to take surgery or the effect of surgery into account when assigning impairment ratings. By issuing and applying advisories that allow doctors to do just that, the Division has acted outside its statutory authority because the fourth edition of the *Guides* is the only permissible source for determining impairment ratings within the Texas workers' compensation system.

*Id*. at 876 (citing TEX. LAB. CODE ANN. § 408.124; 28 TEX. ADMIN. CODE § 130.1(c); and *Garcia*, 893 S.W.2d at 526).[7] Following the *Lumbermens* decision, the Division issued a bulletin which

---

[6] In his decision on the contested case hearing, the hearing officer noted that it was not shown that each of the required preoperative x-rays of Weeks had been taken, nor is this clear from the record. However, the presence or absence of such x-rays does not alter the outcome of this appeal.

[7] Subsequent Appeals Panel decisions have overturned contested case hearing decisions in which the impairment rating adopted by the hearing officer was based on the application of the Advisories. *See* Appeal No. 071186, 2007 WL 2446096 (Tex. Dep't of Ins., Div. of Workers' Comp., Aug. 1, 2007); *see also* Appeal No. 071068,

provided that Advisories 2003-10 and 2003-10B "shall no longer be used in determining impairment ratings." Tex. Dep't of Ins. Commissioners' Bulletin No. B-0033-07 (July 18, 2007). Accordingly, it is not appropriate under the *Guides* for an examining doctor using the Injury Model to base his determination of an impairment rating on the fact that the individual had undergone a spinal fusion surgery.

## C. Evidence of Weeks's Impairment Rating

Although the district court did not issue findings of fact and conclusions of law, we construe the court as having adopted Dr. Chapman's report as the basis for its judgment.[8] Weeks does not dispute that Dr. Chapman relied upon the fact that he had undergone spinal fusion in determining his impairment rating. Dr. Chapman performed a medical evaluation on Weeks on October 14, 2002, and testified that he believed that he followed the injury model in doing so. Dr. Chapman placed Weeks's injury into DRE category V and assigned a 25 percent impairment rating. Dr. Chapman explained that his determination was "based upon the fact that this gentleman has had a spinal fusion and therefore has had a controlled fracture and therefore fits in the multilevel spinal segment structural compromise definition of Motion Segment Integrity Loss."

Dr. Chapman's reliance on Weeks's surgery in determining his impairment rating is also evident in his prior correspondence to the Division. In a letter dated July 8, 2002, Dr. Chapman wrote that Weeks's spinal fusion involved a controlled fracture and that "[t]herefore a spine fusion . . . is Loss of Motion Segment Integrity." According to Dr. Chapman, this put Weeks's injury into

---

2007 WL 2446093 (Tex. Dep't of Ins., Div. of Workers' Comp., July 25, 2007).

[8] The trier of fact in the review of a Division decision is required to adopt the impairment rating of one of the physicians in the case, *Garcia*, 893 S.W.2d at 528, and we assume that the trial court did so. The trial court concluded that Weeks had a 25 percent impairment rating and an MMI date of April 17, 2002. The evidence shows that only Drs. Chapman and Reid assigned a 25 percent impairment rating to Weeks. Dr. Chapman was the only physician to assign an April 17, 2002, MMI date. Since Dr. Reid's report was not at issue, it is apparent that the district court adopted Dr. Chapman's impairment rating and MMI date.

a DRE category IV, which, coupled with his radiculopathy, resulted in DRE category V and a 25 percent impairment rating. In a September 25, 2002, letter to the Division, Dr. Chapman wrote that "structural inclusion includes fractures or dislocations and since spinal fusions are controlled fractures . . . it is an absolute fact that spinal fusions are controlled fractures and therefore anyone undergoing a spinal fusion has had a fracture . . . ." In the same letter, Dr. Chapman acknowledged that his conclusion was based on the "more recent Guides" and not on the "State of Texas mandated Guides."

Finally, in his deposition testimony, which was read into evidence at trial, Dr. Chapman answered affirmatively when asked whether he found loss of motion segment integrity based upon the fact that Weeks had undergone surgery. In addition, Dr. Chapman answered affirmatively when asked whether the reason that he had put Weeks into DRE category V, rather than DRE category III, rested on the fact that Weeks had a spinal fusion. Accordingly, Dr. Chapman's impairment rating was based upon a factor not permitted by the *Guides*. The evidence as to Dr. Chapman's impairment rating was therefore legally insufficient to support the judgment. We sustain Issue One.

### D. Evidence of Maximum Medical Improvement

Fireman's Fund also appeals the district court's judgment that Weeks reached maximum medical improvement on April 17, 2002, which is the date reported by Dr. Chapman. Fireman's Fund argues that Dr. Singleton's impairment rating was the only valid impairment rating introduced at trial, so the corresponding MMI date was the only valid MMI date in evidence. Fireman's Fund relies on that portion of the Texas Administrative Code which provides that "[a]ssignment of an impairment rating for the current compensable injury shall be based on the injured employee's condition as of the MMI date considering the medical record and the certifying examination." 28 TEX. ADMIN. CODE § 130.1(c)(3).

While the Labor Code requires that the trial court adopt a specific impairment rating, there is no similar requirement with regard to the MMI date of a claimant. *See* TEX. LAB. CODE ANN. § 410.306. However, the Supreme Court has noted that "[a]ny dispute that challenges an impairment rating's finality necessarily implicates the date of maximum medical improvement and the amount paid as temporary income benefits." *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). The Division has noted that "the concepts of MMI and IR are somewhat inextricably intertwined, and an IR cannot be assessed until MMI is reached." Appeal No. 950018, 1995 WL 128383, at *3 (Tex. Workers' Comp. Comm'n, Feb. 17, 1995) (reversing hearing officer's decision that adopted impairment rating from one doctor's report and a later MMI date contained in a different doctor's report). In a Division appeal in which the statutory MMI date preceded the MMI date certified by the designated doctor, the Division explained:

> [W]e have never held that MMI and IR can never be individually considered and decided. IR can be decided separately from MMI, for example, when MMI is agreed to by the parties or when, as in this case, statutory MMI has been reached. In such cases, it is essential only that MMI be reached before an IR is assigned.

Appeal No. 931125, 1994 WL 31842, at *3 (Tex. Workers' Comp. Comm'n, Jan. 26, 1994) (citation omitted). Because the evidence as to Dr. Chapman's impairment rating is legally insufficient, and because the corresponding MMI date falls several months after the rating adopted by the Division, we hold that the evidence concerning the MMI assigned by Dr. Chapman is likewise legally insufficient. We sustain Issue Two.

We therefore reverse the judgment of the trial court and render judgment affirming the decision of the Division.


KENNETH R. CARR, Justice

June 30, 2008

Before Chew, C.J., McClure, and Carr, JJ.