**TEXAS MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Ralf G. BOETSCH, Appellee.**

**No. 05–08–00749–CV.**

Court of Appeals of Texas, Dallas.

March 9, 2010.

Mary A. Keeney, Graves, Dougherty, Hearon & Moody, Mary Barrow Nichols, Shannon Leigh Pounds, Austin, Sandra Cockran Liser, Jennifer Willingham, Brown, Dean, Wiseman, Proctor, Hart & Howell, LLP, Fort Worth, for appellant.

Bradley Dean McClellan, Rodriguez & Craddock, Austin, Patrick O. Naylor, Patrick O. Naylor, P.C., Irving, for appellee.

Before Justices MORRIS, O'NEILL, and FILLMORE.

## OPINION

Opinion by Justice O'NEILL.

In this workers' compensation case, appellant Texas Mutual Insurance Company appeals a judgment granted in favor of appellee Ralf G. Boetsch. In three issues, Texas Mutual contends (1) the trial court erred in granting Boetsch's motion for partial summary judgment on his impairment rating, (2) the trial court's jury charge contained a reversible comment on the weight of the evidence, and (3) Texas Mutual was entitled to a jury determination on reasonable and necessary attorney's fees. We conclude the method used for determining Boetsch's impairment rating was not valid, but that the jury charge did not contain reversible error. We reverse the trial court's judgment with respect to the impairment rating and render judgment that Boetsch's impairment rating is 27%. We conclude Texas Mutual was not entitled to a jury trial on attorney's fees; nevertheless, in light of our partial rever-

sal of the trial court's judgment, we remand the issue of attorney's fees to the trial court for apportionment.

In 2003, Boetsch suffered a compensable on-the-job neck and back injury. Boetsch filed a claim for workers' compensation benefits. Texas Mutual was the workers' compensation carrier for Boetsch's employer. As a result of the injury, Boetsch had corrective spinal fusion surgery. The surgery was successful, but after the surgery, he suffered a seizure in the recovery room. Boetsch was referred to a neurologist, Dr. Charles Tuen. Tuen diagnosed Boetsch with a seizure disorder. According to Tuen, the cause of the seizure disorder was the surgery.

Dr. Ronnie Shade was the designated doctor under the Workers' Compensation Act assigned to determine Boetsch's date of Maximum Medical Improvement (MMI) and to assign an impairment rating. It is undisputed that Boetsch reached his statutory MMI date on April 17, 2005. Shade assigned an impairment rating of 36%. He based this rating on the Guides to the Evaluation of Permanent Impairment (the Guides) adopted by the American Medical Association (AMA) as well as certain "Advisories" adopted by the Texas Department of Insurance, Division of Workers' Compensation (Division). The 36% impairment rating included impairment attributable to Boetsch's neck and back injury as well as a seizure disorder. Shade indicated that if he did not use the advisories to determine Boetsch's impairment rating, it would be 27%.

Texas Mutual disputed Shade's use of the Division's advisories to determine Boetsch's impairment rating. Texas Mutual also disputed whether Boetsch suffered from a compensable seizure disorder. Following contested case hearings on both issues, the hearing officer found in Boetsch's favor on both issues and assigned a 36% impairment rating. Texas Mutual appealed both decisions to the Division's appeals panel. The Division affirmed. Texas Mutual then sought judicial review by filing suit in district court pursuant to section 410.252 of the Texas Labor Code. See TEX. LAB.CODE ANN. § 410.252 (Vernon 2006). Boetsch answered and filed a counterclaim seeking attorney's fees under section 408.221 of the labor code. See TEX. LAB.CODE ANN. § 408.221 (Vernon 2006).

There were two issues before the trial court in this suit for judicial review: (1) whether the impairment rating attributable to Boetsch's neck and back injury was properly determined, and (2) whether Boetsch suffered a compensable seizure disorder. The trial court decided the impairment rating issue on competing motions for summary judgment. However, the issue of whether Boetsch suffered a compensable seizure disorder was tried to a jury. After the jury determined Boetsch did suffer from a compensable seizure disorder, the trial court ruled on Boetsch's motion for summary judgment that the impairment rating concerning his back and neck injury was properly determined. The trial court rendered judgment that Boetsch's impairment rating was 36%.

■ In its first issue, Texas Mutual contends the trial court erred in granting summary judgment that the impairment rating attributable to Boetsch's neck and back injury was properly determined. According to Texas Mutual, the impairment rating was invalid because it was based on advisories that were adopted by the Division in contravention of the labor code.

The labor code requires the Division to use the Guides published by the AMA when determining an impairment rating. TEX. LAB.CODE ANN. § 408.124 (Vernon 2006). The Guides contain specific provi-

sions concerning how to calculate an impairment rating for injuries following spinal fusion surgery. The Guides specifically prohibit an impairment to be based on loss of motion caused by corrective spinal fusion surgery. To fill a perceived gap in the Guides, the Division adopted Advisories 2003-10 and 2003-10B to assign impairment ratings for injuries following spinal fusion surgery. These advisories permit consideration of loss of motion caused by corrective spinal fusion surgery. Shade used these advisories to assign an impairment rating to Boetsch's neck and back injury.

In *Texas Department of Insurance v. Lumbermens,* the Austin Court of Appeals concluded that Advisories 2003-10 and 2003-10B were invalid and cannot be used to assess impairment ratings. *Tex. Dep't of Ins. v. Lumbermens,* 212 S.W.3d 870, 876 (Tex.App.-Austin 2006, pet. denied). In *Bell v. Zurich American Insurance Co.,* —— S.W.3d ——, —— (Tex.App.-Dallas 2009, no pet. h.), this Court, agreeing with *Lumbermens,* reversed a summary judgment because the defendant's impairment rating was based on Advisories 2003-10 and 2003-10B. We held that it is not appropriate under the Guides for an examining doctor to base his determination of an impairment rating on Advisories 2003-10 or 2003-10B and an impairment rating based on those advisories is invalid.[1] *Bell,* —— S.W.3d at ——; *see also Fireman's Fund Ins. Co. v. Weeks,* 259 S.W.3d 335, 342 (Tex.App.-El Paso 2008, pet. denied) (Advisories 2003-10 and 2003-10B invalid from issuance). That decision is binding and we accordingly conclude any impair-

ment rating based on the advisories is invalid.

In the alternative, Boetsch argues the 36% impairment rating was appropriate notwithstanding the prohibition against using the advisories. The summary judgment evidence is conclusive that the 36% impairment rating was based on the advisories. Boetsch admitted as much in his motion for summary judgment, expressly stating that his impairment rating should be 27% if the advisories cannot be used. There is no evidence in the record that Boetsch's impairment rating is 36% without the advisories. Because we conclude the advisories should not have been used, we conclude the trial court erred in granting Boetsch's motion for summary judgment. As shown by the summary judgment record, the 27% impairment rating is appropriate if the advisories are not used, assuming Boetsch suffers from a compensable seizure disorder. We therefore turn to Texas Mutual's second point of error, which concerns whether the impairment rating should include impairment for a seizure disorder.

 The issue of whether Boetsch suffered a compensable seizure disorder was tried by a jury. Because Texas Mutual brought this suit for judicial review, it had the burden to prove by a preponderance of the evidence that Boetsch did not suffer from a compensable seizure disorder. *See* TEX. LAB.CODE ANN. § 410.303 (Vernon 2006). The jury found it failed to meet this burden, and Texas Mutual does not challenge the jury's determination. Rather, in its second issue, Texas Mutual contends we should reverse the jury's ver-

1. Boetsch nevertheless asserts *Lumbermens* should not be applied retroactively. At the time of Boetsch's contested case hearing, the *Lumbermens* decision had not been decided and the Division was using the advisories to assess impairment ratings. However, to the extent we rely on *Lumbermens* in this case, we do so not for any preclusive effect, but only for its precedential value. For the reasons explained in *Lumbermens,* the advisories violate the labor code.

dict because the trial court commented on the weight of the evidence when it defined "seizure disorder" in the jury charge.

We begin by noting that it was Texas Mutual that first requested the trial court to include a definition of seizure disorder in the trial court's charge. Specifically, it requested seizure disorder be defined as "recurrent seizures." Instead, the trial court defined seizure disorder as "recurrent seizures, or the propensity to develop repeated or recurrent seizures."[2] At the charge conference, Texas Mutual objected to the definition as constituting a comment on the weight of the evidence.

At trial, it was undisputed that following his surgery Boetsch suffered a seizure and that the post-operative seizure was the result of the surgery and therefore compensable. The only fact issue submitted to the jury was whether Texas Mutual showed Boetsch did not suffer from a permanent "seizure disorder" as a result of the surgery.

According to Texas Mutual's expert, Dr. Gregg Shalan, someone who has "repeated seizures" has a seizure disorder. He testified that any seizure disorder Boetsch may have was not caused by the surgery. Shalan acknowledged that the single post-surgery seizure was caused by the surgery. More specifically he said, the seizure was caused by medications given during surgery. According to Shalan, when a seizure is induced by medications, a patient is not at an increased risk of future seizures.

Shalan conceded he could not say with any medical certainty whether or not Boetsch has a seizure disorder and acknowledged he has never personally examined Boetsch. He testified he is familiar with Dr. Tuen, and if Tuen diagnosed Boetsch as having a seizure disorder, he would not dispute that diagnosis. He nevertheless said he would disagree with Tuen to the extent Tuen asserted seizure disorder can ever be caused by surgery or any drugs administered during surgery.

Tuen testified Boetsch definitely had a seizure disorder and that it was caused by the surgery. According to Tuen, if a patient suffers from a seizure from the stress of surgery, he is more susceptible to future seizures and thus has a seizure disorder. Tuen also based his diagnosis of seizure disorder on an ambulatory EEG that was performed on Boetsch after the surgery. This EEG showed certain sharp waves indicative of a seizure disorder. Boetsch has been on anti-seizure medication since Tuen's diagnosis. Tuen suspects Boetsch had a second seizure following the post-surgery seizure and, as a consequence, increased Boetsch's anti-seizure medication.

 In this issue, Texas Mutual contends the trial court erred in commenting on the weight of the evidence when it defined seizure disorder as including "the propensity to develop repeated or recurrent seizures." Rule 277 provides "[t]he court shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of their answers, but the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence or advises the jury of the effect of their answers when it is properly a part of an instruction or definition." See TEX.R. CIV. P. 277. An impermissible comment on the weight of the evidence occurs when, after examining the entire charge, it

2. The definition given closely tracked one of the proposed definitions Texas Mutual had requested prior to trial. Specifically, one of the definitions Texas Mutual proposed for seizure disorder was "Seizure Disorder is defined as repeated or recurrent seizures. 'Seizure Disorder' can also include an increased risk of suffering a future seizure."

is determined that the judge assumed the truth of a material controverted fact or exaggerated, minimized, or withdrew some pertinent evidence from the jury's consideration. *Redwine v. AAA Life Ins. Co.,* 852 S.W.2d 10, 14 (Tex.App.-Dallas 1993, no writ). An instruction also will be held to be an improper comment on the weight of the evidence if it suggests to the jury the trial judge's opinion concerning the matter about which the jury is asked. *Id.* Reversal is required if an improper comment on the weight of the evidence is one that was calculated to cause and probably did cause the rendition of an improper judgment. *Id.* In making this determination, this Court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. Alleged error will be deemed reversible only if, when viewed in the light of the totality of these circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex. R.App. P. 44.1(a)(1); *see Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986).

After reviewing the record as a whole, we cannot conclude the trial court's definition of seizure disorder constituted a comment on the weight of the evidence. Whether Boetsch had a seizure disorder is relevant insofar as it constitutes a permanent impairment for purposes of assessing an impairment rating. Thus, the relevant issue, and for what Boetsch is seeking compensation, is that he is at an increased risk of having future seizures, not for any seizures he may have suffered in the past.[3] Reviewing the expert testimony in context, they disagreed on how to best determine whether Boetsch was at risk for future seizures. According to Tuen, a single seizure, induced by surgery, justified a finding of future propensity. According to Shalan, a single seizure induced by surgery would not increase the risk of future seizures. The trial court's definition in no way would suggest to the jury that the trial court agreed or disagreed with either expert. Thus, the trial court's definition of seizure disorder did not assume the truth of a material controverted fact or exaggerate, minimize, or withdraw some pertinent evidence from the jury's consideration. Therefore, we conclude the definition did not constitute an improper comment on the weight of the evidence.

Moreover, even if the definition constituted a comment on the weight of the evidence, we cannot conclude the definition probably led to the rendition of an improper judgment. Again, as noted above, whether Boetsch suffered a seizure disorder was not seriously contested. Although Shalan testified a seizure disorder is "repeated seizures," he did not specifically exclude the propensity of having future seizures as constituting a seizure disorder. Moreover, Texas Mutual's case was based on evidence that Boetsch was not more "susceptible" to future seizures. If the jury believed Shalan, the charge would have required the jury to find in favor of Texas Mutual on this issue. We cannot conclude the trial court's definition of seizure disorder probably led to the rendition of an improper judgment. We resolve the second issue against Texas Mutual.

■ In the third issue, Texas Mutual contends the trial court erred in not submitting the issue of attorney's fees to the jury. The trial court awarded Boetsch his attorney's fees under the provisions of sec-

---

**3.** The specific 10% impairment was attributed under the Guides for "paroxysmal disorder with predictable characteristics and unpre-

dictable occurrence that does not limit activities but is a risk to the patient or limits performance of daily activities."

tion 408.221 of the labor code. *See* Tex. Lab.Code Ann. § 408.221 (Vernon 2006). According to Texas Mutual, it was entitled to a jury determination of this issue. However, in *Insurance Co. of State of Pennsylvania v. Muro,* 285 S.W.3d 524, 531 (Tex.App.-Dallas 2009, pet. filed), this Court decided this precise issue against Texas Mutual. *See also Transcont'l Ins. v. Crump,* 274 S.W.3d 86, 100–02 (Tex. App.-Houston [14th Dist.] 2008, pet. granted); *Discover Prop. & Cas. Ins. Co. v. Tate,* 298 S.W.3d 249, 262 (Tex.App.-San Antonio 2009, pet. filed) (Marion, J., dissenting). Specifically, we held that because section 408.221 requires evidence to be submitted to the trial court and requires the trial court to consider several factual issues, the trial court, not a jury, determines the amount of attorney's fees to be awarded under the statute. *Muro,* 285 S.W.3d at 531.

According to Texas Mutual, our decision in *Muro* conflicts with the Texas Supreme Court's opinion in *City of Garland v. The Dallas Morning News,* 22 S.W.3d 351, 367 (Tex.2000). In *City of Garland,* the supreme court held that a statute requiring the trial court to "assess" reasonable attorney's fees did not mean that the trial court was required to determine the amount of such fees. Thus, a jury determination was required, if requested. *Id.* However, unlike statutes that merely require trial courts to "assess" or "award" reasonable fees, section 408.221 of the labor code requires the trial court consider specified *factual* issues, including the time and labor required, the skill required, and the novelty and difficulty of the questions presented. *See* Tex. Lab.Code Ann. § 408.221 (Vernon 2006). Thus, unlike the statute in *City of Garland,* the amount of attorney's fees awarded under section 408.221 are to be decided by the trial court.

■ In the alternative, Texas Mutual contends the labor code violates its right to a jury trial under the Texas Constitution. The Texas Constitution has two provisions that protect the right to a trial by jury. Article I, section 15, protects the right to a jury trial for those actions or analogous actions which were tried by a jury when the Texas Constitution was adopted in 1876. *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 636 (Tex.1996). Attorney's fees were not recoverable at common law. *New Amsterdam Cas. Co. v. Tex. Indus., Inc.,* 414 S.W.2d 914, 915 (Tex.1967).

Texas Mutual nevertheless asserts it was entitled to a jury trial on the issue of attorney's fees because Boetsch's claim for attorney's fees is analogous to "common law civil penalty actions." It further asserts such claims were tried by a jury in 1876. Texas Mutual has made no attempt to show how a claim for attorney's fees is analogous to any particular civil penalty action. Instead, it vaguely asserts attorney's fees claims and civil penalty actions generally are both "penal in nature." Moreover, Texas Mutual has not shown a right to a trial by jury existed for all "civil penalty actions." *See e.g., Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440 (Tex.1993) (mere fact that civil penalties assessed does not show analogous action). We conclude Texas Mutual has not shown the two claims are analogous. Therefore, it has not shown section 408.221 violates section I, section 15. *Crump,* 274 S.W.3d at 102.

■ Article V, section 10 also provides for a right to a trial by jury for all "causes" brought in the district courts. *Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 527 (Tex.1995). In *Garcia,* the supreme court held that a suit seeking judicial review of an administrative decision under the Workers' Compen-

sation Act was not a "cause" and therefore does not implicate the right to a trial by jury. *Id.* at 527. Because the proceeding before the trial court did not constitute a cause under article V, section 10, neither does Boetsch's claim for attorney's fees in that proceeding. *See Crump,* 274 S.W.3d at 102. We resolve the third issue against Texas Mutual.

■ We nevertheless conclude the trial court's award of attorney's fees should be reversed and remanded. If a carrier appeals multiple issues on judicial review and prevails on some, but not all, the trial court shall apportion and award fees to the claimant's attorney only for the issues on which the claimant prevails. Here, the claimant did not prevail on the 36% impairment rating, but did prevail on the issues regarding the seizure disorder. Consequently, we must remand the issue of attorney's fees to the trial court for apportionment.

We reverse the trial court's judgment assigning a 36% impairment rating and render judgment that Boetsch's impairment rating is 27%. We reverse and remand the issue of attorney's fees to the trial court for further proceedings consistent with this opinion.