

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-14-00244-CV

___

NINA MENDOZA, APPELLANT

V.

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, APPELLEE

___

On Appeal from the 47th District Court
Randall County, Texas
Trial Court No. 65511-A, Honorable Dan L. Schaap, Presiding

___

December 22, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

In this workers' compensation case, appellant Nina Mendoza appeals the trial court's summary judgment disposing of her entire case in favor of appellee, Indemnity Insurance Company of North America.  Finding no error by the trial court, we will affirm its judgment.

Background

Mendoza sustained a compensable injury on March 21, 2011. The initial diagnosis was a thoracic strain. There was subsequent improvement in thoracic pain but increasing lumbar pain was noted. An April 2011 lumbar MRI indicated "[l]arge disk extrusion at L5-S1, projecting inferiorly resulting in significant mass-effect on the right lateral recess." About six weeks later an EMG showed "lumbar radiculopathy of L5-S1 nerves on the right lower extremity." Conservative treatment of the lumbar disc herniation included three epidural steroid injections.

In August 2011 a neurosurgeon examined Mendoza and concluded conservative treatment had failed. His impression was: (1) lumbar radiculopathy; (2) herniated nucleus pulposus at L5-S1; and (3) lumbago. He recommended a lumbar laminectomy, discectomy, foraminotomy, and partial facetectomy at L5-S1.

At the request of the Texas Department of Insurance-Workers' Compensation Division, a designated doctor[1] evaluated Mendoza on August 24, 2011. The designated doctor recognized an extent of injury issue because Indemnity had accepted the thoracic strain diagnosis but the designated doctor found, from Mendoza's medical records and his examination, evidence of the lumbar injury. He assessed zero percent impairment rating for the compensable thoracic strain with maximum medical improvement ("MMI") reached on August 24 and, alternatively, ten percent impairment

---

[1] "'Designated doctor' means a doctor appointed by mutual agreement of the parties or by the division to recommend a resolution of a dispute as to the medical condition of an injured employee." TEX. LAB. CODE ANN. § 401.011(15) (West 2015).

rating for the non-compensable herniated disc with radiculopathy injury.[2] He qualified his MMI determination with the explanation, "It is my recommendation [Mendoza] needs surgical intervention, however since this has not been scheduled or approved I am finding the examinee at MMI."

Indemnity accepted the zero percent impairment rating. Mendoza did not dispute the rating within ninety days. In October 2011 Indemnity accepted the alternate impairment rating of the designated doctor.[3] Mendoza did not dispute the alternate rating within ninety days. Indemnity approved Mendoza's request for lumbar surgery which was performed in January 2012.

Mendoza challenged the ten percent impairment rating and the August 24 date of MMI. In July 2012 the Division conducted a contested case hearing. Mendoza argued the first impairment rating did not become final because her facts came within a

---

[2] "Maximum medical improvement" means the earlier of "the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated"; "the expiration of 104 weeks from the date on which income benefits begin to accrue"; or "the date as provided by Section 408.104 (MMI after spinal surgery)." TEX. LAB. CODE ANN. § 401.011(30).

"Impairment rating" means "the percentage of permanent impairment of the whole body resulting from the current compensable injury." 28 TEX. ADMIN. CODE § 130.1(c)(1). "An employee receives impairment income benefits according to the employee's impairment rating . . . ." *Rodriguez v. Service Lloyds Ins. Co.,* 997 S.W.2d 248, 253 (Tex. 1999). For an injured employee to obtain impairment benefits, a doctor must certify the employee has reached MMI and assign the employee an impairment rating. *McWatt v. Mattax,* 03-13-00332-CV, 2015 Tex. App. LEXIS 2504, at *3-4 n.5 (Tex. App.—Austin Mar. 18, 2015, no pet.) (mem. op.) (citing TEX. LAB. CODE ANN. § 408.123(a)).

[3] According to the hearing officer's "decision and order," after receiving additional medical records Indemnity "changed its position" on October 12, 2011, accepting the ten percent alternate impairment rating.

3

statutory exception to finality.[4] She contended she required surgery but it was not performed before certification, hence she received improper and inadequate treatment, and she was misdiagnosed as to the lumbar spine injury. Indemnity argued the ten percent impairment rating was not timely contested, and thus became final, and the exceptions to finality Mendoza relied on were not supported by the required compelling medical evidence. The hearing officer found the designated doctor was authorized to issue alternate ratings because an extent of injury dispute existed. According to a Division rule, he further found, the ninety-day period for contesting the rating applied to the appropriate alternate rating, once the extent of injury dispute was resolved. The hearing officer found the exceptions to the finality rule inapplicable. Thus the assigned ten percent impairment rating was final.

The hearing officer's decision became final before an appeals panel, and Mendoza sought judicial review in the district court. In her live petition, Mendoza identified the disputed issues as: (1) Whether the first certification of MMI and assigned impairment rating from the designated doctor became final under Texas Labor Code Section 408.123 and Rule 130.12; and (2) Whether the Division should order the designated doctor to re-examine Mendoza due to lumbar surgery subsequent to the first certification of MMI and impairment.

The parties filed cross-motions for summary judgment. The court granted Indemnity's motion, concluding Mendoza did not timely challenge the MMI and impairment rating, and the summary judgment record did not contain compelling medical evidence of any statutory exception to the ninety-day finality rule.

---

[4] *See* TEX. LABOR CODE ANN. § 408.123(f)(1) (West 2015).

4

Analysis

Mendoza presents six lengthy, and at times overlapping, issues. But her argument on appeal, in order to reverse the trial court's summary judgment, comes down to whether the summary judgment record contains more than a scintilla of evidence supporting each element of an asserted exception to finality of the MMI certification and the assigned impairment rating.

An appellate court reviews a summary judgment *de novo*. *Henkel v. Norman,* 441 S.W.3d 249, 250 (Tex. 2014) (per curiam). A plaintiff moving for summary judgment on its own claim must conclusively prove each essential element of its cause of action. *Rhône-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex. 1999). A defendant presenting a traditional motion for summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action. TEX. R. CIV. P. 166a(c); *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997). The movant for a no-evidence summary judgment must assert "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact" on the challenged elements. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 581-82 (Tex. 2006).

When parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, a reviewing court considers the summary judgment evidence supporting both motions and "render[s] the judgment

5

the trial court should have." *Merriman v. XTO Energy, Inc.,* 407 S.W.3d 244, 248 (Tex. 2013).

If a movant challenges by traditional and no-evidence motions an element of a claim or defense on which the non-movant bears the burden of proof at trial, a court first considers the no-evidence motion because if the non-movant fails to produce more than a scintilla of evidence on the challenged element an analysis of the proof offered in support of the traditional motion is unnecessary. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex. 2004).

The pertinent provisions of the Texas Labor Code, contained in section 408.123, were enacted in 2003 after court decisions addressing the former Texas Workers' Compensation Commission's 90-day rule concerning the finality of MMI certifications and impairment rating assignments.[5] Section 408.123, in relevant part, provides:

> (e)  Except as otherwise provided by this section, an employee's first valid certification of maximum medical improvement and first valid assignment of an impairment rating is final if the certification or assignment is not disputed before the 91st day after the date written notification of the certification or assignment is provided to the employee and the carrier by verifiable means.
>
> (f)  An employee's first certification of maximum medical improvement or assignment of an impairment rating may be disputed after the period described by Subsection (e) if:
>
>> (1)  compelling medical evidence exists of:

---

[5] *See Rodriguez v. Service Lloyds Ins. Co.,* 997 S.W.2d 248 (Tex. 1999) (invalidating exceptions to 90-day rule applied by TWCC appeals panels); *Fulton v. Associated Indemn. Corp.,* 46 S.W.3d 364 (Tex. App.—Austin 2001, pet. denied) (invalidating TWCC 90-day rule). *See also Tex. Prop. & Cas. Ins. Guar. Ass'n for Reliance Nat'l Ins. Co. v. Toberny*, No. 03-08-00483-CV, 2010 Tex. App. LEXIS 1922 (Tex. App.—Austin March 19, 2010, *pet. denied sub nom. Lumbermens Mut. Cas. Co. v. Toberny*) (rejecting effort to apply *Fulton* in insurer's contest of MMI and IR).

> \* \* \* \*
>> (B)    a clearly mistaken diagnosis or a previously undiagnosed medical condition; or
>>
>> (C)    improper or inadequate treatment of the injury before the date of the certification or assignment that would render the certification or assignment invalid;
>
> \* \* \* \*

TEX. LAB. CODE ANN. § 408.123 (West 2015).

Mendoza did not timely dispute the designated doctor's certification of MMI and assignment of impairment rating. We look then for proof of a ground under subsection (f) permitting an untimely challenge of the certified MMI and assigned impairment rating. In this way, Mendoza asserts the record contains compelling medical evidence she received improper or inadequate medical treatment prior to certification of MMI and assignment of an impairment rating and a clearly mistaken diagnosis.

Without citing authority, Mendoza argues that on her challenge of finality under subsection (f), it was Indemnity's summary judgment burden to conclusively negate the asserted exceptions. Indemnity counters, also without authority, that proof of a statutory exception to the finality rule was Mendoza's burden. As the party appealing the Division's decision, Mendoza bore the burden of proving an exception to finality. TEX. LAB. CODE ANN. § 410.303 (West 2015); *cf. Benson v. State,* No. 03-15-00121-CR, 2015 Tex. App. LEXIS 9238, at \*3 (Tex. App.—Austin Aug. 31, 2015, pet. refused) (explaining in case involving application of statutory affirmative defense to State's prima facie case of bond forfeiture, "[a] party seeking to avoid summary judgment by virtue of an affirmative defense bears the burden of raising a material issue of fact on each element of that defense"). Thus to avoid a no-evidence summary judgment it was for Mendoza

to present summary judgment evidence exceeding a mere scintilla on at least one of the exceptions to finality presented.

We agree with the Division's hearing officer and the trial court that the record contains no compelling medical evidence of improper or inadequate treatment of the injury before the date of the MMI certification. Mendoza would have us conclude that an issue as to the adequacy of her treatment was raised by the stipulated fact the neurosurgeon "found that [Mendoza] had failed conservative care and recommended lumbar surgery," coupled with the facts the surgery was later authorized, performed and improved her condition. Given the many reasons why conservative care of a particular patient might fail, we do not agree that its mere failure says anything about the propriety or adequacy of the patient's treatment. And in Mendoza's case, we cannot see the neurosurgeon's statement as compelling medical evidence the treatment was improper or inadequate.

We agree also with the trial court that the record is devoid of evidence of a clearly mistaken diagnosis. From the stipulated facts, it is undisputed that the conditions for which the neurosurgeon recommended surgery were recognized from the time of Mendoza's MRI in April, and the EMG in May, 2011. The designated doctor agreed with the neurosurgeon's recommendation, and assigned the ten-percent impairment rating based on his finding of a lumbar spine DRE category III.[6] If, as

---

[6] *See Texas Dep't of Ins. v. Lumbermens Mut. Cas. Co.,* 212 S.W.3d 870, 872 (Tex. App.—Austin 2006, pet. denied) (explaining "[t]he principal methodology found in the fourth edition of the [American Medical Association's *Guides to the Evaluation of Permanent Impairment*] is its injury model, which uses objectively verifiable evidence to place patients into one of eight diagnosis-related estimate (DRE) categories"); *Fireman's Fund Ins. Co. v. Weeks,* 259 S.W.3d 335, 339 (Tex. App.—El Paso 2008,

Mendoza contends, the designated doctor should not have determined her to be at MMI in the face of her need for surgery, his error was not one of a mistaken diagnosis.

For these reasons, we find the record evidence insufficient to establish an issue of fact concerning an exception to finality under subsection 408.123(f)(1)(B) or (C).

Mendoza concludes, again without authority, with a contention "the 90 day finality rule does not apply or was otherwise rendered inapplicable and/or moot when Indemnity accepted the [designated doctor's] alternate rating of 10%." This issue too lacks merit. As we perceive Mendoza's argument, it is predicated on the idea that the designated doctor's zero-percent impairment rating was the first valid assignment, and the 90-day finality rule had no application to the alternate ten-percent rating. We agree with Indemnity that the argument disregards the Division's administrative rule 130.12 which provides, in part:

> (a) The certifications and assignments that may become final are:
> \* \* \* \*
> (4) A designated doctor may provide multiple IRs if there is a dispute over extent of injury. Whichever rating from the designated doctor applies to the compensable injury once an extent of injury (EOI) dispute has been resolved may become final if not disputed. An EOI dispute does not constitute a dispute of the MMI/IR for purposes of finality under this subsection.

TEX. ADMIN. CODE § 130.12(a)(4). Mendoza had ninety days from her notification of Indemnity's acceptance of the ten-percent impairment rating to dispute that rating. The Division did not err by determining the ten-percent rating to be final when she did not dispute it within that period.

_____

pet. denied) (explaining under the AMA injury model, "an examining doctor uses medical history, physical examination, and other medical data to determine the appropriate impairment category").

## Conclusion

Finding no evidence to support the only ground by which Mendoza could reverse the trial court, we conclude further discussion of her issues is unnecessary to our disposition of the appeal. TEX. R. APP. P. 47.1. The judgment of the trial court is therefore affirmed.


James T. Campbell
Justice