In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00011-CV
_____

JAMES C. ILER AND LINDA ILER, Appellants

V.

RVOS FARM MUTUAL INSURANCE COMPANY, Appellee

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CV0902090

MEMORANDUM OPINION

James and Linda Iler ("the Ilers" or "Appellants") appeal the trial court's take-nothing judgment pursuant to the jury's verdict in favor of RVOS Farm Mutual Insurance Company ("RVOS"). On appeal, the Ilers argue that the trial court erred in allowing the jury to interpret an exclusionary clause in an insurance policy and that the trial court erred in denying Appellants' motion for judgment notwithstanding the verdict because they conclusively established their damages

and attorney's fees. Alternatively, the Ilers argue that charge error requires a new trial.

Background

After RVOS denied their claim for damages allegedly caused by Hurricane Ike in 2008, the Ilers sued RVOS, with whom the Ilers contracted for property insurance for their home in Liberty. In their suit, the Ilers alleged claims for breach of contract, breach of duty of good faith and fair dealing, and violations of certain sections of the Texas Insurance Code.[1] On September 24, 2015, the Ilers filed Plaintiffs' Motion for Construction of Provision of Contract, requesting a ruling from the trial court "construing the language of an exception to an exclusion in the insurance contract that forms the basis of this suit so that the court's interpretation can be submitted to the jury in the charge." The relevant policy exclusion provided as follows:

PART 8 "Losses Not Covered"
1.     The following exclusions apply to loss to property described under Part 3 – PROPERTY COVERAGE, but they do not apply to an ensuing loss caused by fire, smoke or explosion.
        . . . .

---

[1] According to Plaintiffs' Second Amended Original Petition, after Plaintiffs filed suit, RVOS filed a summary judgment alleging that RVOS was not liable on the policy because of the exclusion language in Part 8 of the policy. The motion for summary judgment and order denying summary judgment are not part of the appellate record.

2

c. We do not cover loss caused by windstorm, hurricane or hail to:

. . . .

(4) the interior of a covered building or to personal property contained in a covered building unless direct force of wind or hail makes an opening in a roof or wall and rain enters through this opening and causes the damage.

The Ilers further requested that the trial court "find that the words 'wind makes an opening in a wall' include wind-created separations between a door and a doorframe, between two doors, and between a window and a window frame[.]" RVOS filed a response to the motion and argued that neither the definition of wall nor the definition of door in the Merriam-Webster dictionary supports the Ilers' contention that a door is considered part of a wall, neither definition references the other, and the definition of wall does not state that it includes windows and doorways as part of the wall. According to RVOS, "[u]sing the ordinary common meanings of words, had coverage been intended, the words 'windows' and 'doors' would have been included." On October 7, 2015, the Ilers filed Plaintiffs' Amended Motion for Construction of Provision of Contract stating the following:

Plaintiffs seek a ruling from the court construing the language of an exception to an exclusion in the insurance contract that forms the basis of this suit so that the court's interpretation can be submitted to the jury in the charge.[] Plaintiffs seek a holding that the language is unambiguous and an interpretation of the language, and alternatively seek a holding that the language is ambiguous and an interpretation of the language. Specifically, Plaintiffs request the court

3

find that the words of the exception cover a situation in which wind creates a separation between a door and its frame or threshold, between two doors, and between a window and its frame.

The Ilers argued that "[a]s only the interpretation of an exclusion is in dispute, Plaintiffs contend there is no ambiguity in the contract and the interpretation of the exclusion is a matter of law for the court." According to the Ilers, (1) the ordinary and generally-accepted meaning of the word "opening" includes a space created when two things that are meant to go together are separated, and that any separation of a door and its frame and threshold large enough for rain to pass through is an opening; and (2) the ordinary and generally-accepted meaning of the words "opening in a wall" would include doorways and window openings, and if the wind forces a separation between a door and its frame or threshold large enough for rain to get through then the wind makes an opening in a wall.

At a pre-trial hearing, the trial court found, based on the four corners of the contract, that the exclusion was not ambiguous, there was no conflict in the law, and that any conflict in the evidence would be for the jury to decide. The trial court further explained:

> I denied [RVOS's] motion for summary judgment because I wasn't prepared to say as a matter of law that the facts and events of this case do not fall within coverage.
>
> This jury may decide by [sic] hurricane force wind blowing through the weather stripping created a hole or a gap in the wall. I

4

think that's a point of evidence, and it's a point of argument that you're going to make towards this jury for them to find or not find.

They may decide -- I don't see that that's a question of law.

The trial court severed the extra-contractual claims from the breach of contract claim, and the breach of contract claim was tried to the jury.

Trial Testimony and Post-Judgment Pleadings

Linda Iler (Linda) testified she and her family moved into their newly-built home in Liberty County in March 2007. The Ilers purchased an insurance policy from an insurance agent in Dayton, Texas. At trial, Linda identified the "The Star Policy[,]" the insurance policy through RVOS that the Ilers purchased. Linda testified that she was aware that she and her husband were required to pay premiums under the policy, and that they did not have to pay any premium for excluded items. Linda also testified that she and her husband were aware that Part 8 of the policy was the exclusion portion of the policy, and that they were aware of that portion at the time they bought the policy.

About a year and a half after moving into the home, Hurricane Ike made landfall. According to Linda, she was present at the home when the hurricane made landfall and she became concerned that the French doors in the back of her house that opened inward into the house might be pushed open by the winds. She testified she pushed a recliner chair against the doors so "that for some reason if the doors

did give that would maybe stop the doors from opening completely." Linda testified that someone at the radio station reported to her that the winds had been blowing 120 miles per hour during the hurricane.

According to Linda, she noticed water on the floor in front of the French doors the morning after the worst of the storm had passed. She testified she used three or four bath towels to clean up the water. Linda explained at trial that once the winds died down later that morning she walked the exterior of the house and did not see any flood water or watermarks on the outside of her home. She testified that on the lot they owned next to their house she noticed the tops of trees were gone and branches were lying on the ground, and that one tree had been knocked down. According to Linda, there were no watermarks on the interior walls of her home, she did not notice any leaks in the ceiling or broken windows, she noticed that the weather stripping that was on the French doors prior to Hurricane Ike now was gone, and she did not see anything that would lead her to believe that a flood caused water to get on the floor. Linda testified that the windows and doors of her home were closed during the storm and that she did not see a hole in her home's roof or wall.

Linda testified that for about ten days after Hurricane Ike the family stayed at Linda's mother-in-law's home because her mother-in-law had a generator big

enough to run the air conditioning. According to Linda, during that ten-day period she made a visit to her home and noticed that the wood flooring where the water had been had started to buckle, and that over time there was damage to the floor under beds that were up against windows in other rooms.

Linda explained at trial that she made an insurance claim with RVOS, two adjusters inspected her home, and she told the adjusters that the weather stripping around the doors was gone and that she thought the wind and the rain had caused the floor damage. Linda testified about a letter dated October 16, 2008, which was admitted into evidence at trial. According to Linda, RVOS stated in the letter that the Ilers' insurance policy does not include flood coverage and that the claim was denied because Part 8 of their insurance policy excludes "loss caused by or resulting from flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water or spray from any of these whether or not driven by wind." Linda further testified that she received a letter from RVOS dated April 27, 2009, stating that after Alamo Claims Service inspected the damage, RVOS was "unable to make an allowance for the damage or further investigative testing as the damage was not caused by the named peril in [the Ilers'] policy." The April letter was also admitted into evidence. Linda explained to the jury that she hired the company that built the house to repair the flooring, and the flooring was

repaired. According to Linda, at the time of trial she and her husband still had not paid the company for the repairs.

Linda further testified as follows:

Q. Mrs. Iler, do you know what a doorway is?

. . . .

A. Oh, a doorway, yes, of course.

Q. Is a doorway an opening in a wall?

A. Yes, it is.

Q. If you attached a door to a doorway but you leave the door open, is there an opening in the wall?

A. Yes.

Q. If you close the door, is there an opening in the wall?

A. No.

. . . .

Q. . . . . If the wind blew very hard against the door and if the wind caused the door to bow or separate or otherwise create space between the door itself and the door frame or the threshold or between the doors and that separation was big enough for rain to go through, is a space between a door and its frame or between two doors or between a door and its threshold, is a space an opening?

A. Yes.

Q. So, would you say that if the wind blew hard enough to make a separation between two doors, around the door, under the door, it has made an opening?

A. Yes.

 . . . .

Q. Can a wall have a doorway in it?

A. Yes.

Q. Can a wall have a window opening in it?

A. Yes.

On cross-examination, Linda testified that she understood that exclusions are things that the policy will not cover, and that she understood Part 8, the portion of the policy entitled, "Losses not covered[,]" even prior to buying the policy. The policy was admitted into evidence at trial. According to Linda, she latched the French doors before the hurricane hit because she knew there would be strong wind, and the doors did not open as a result of the storm. Linda testified that she believed either the wind blew causing the doors to bulge and allowing water to go in or that the weather stripping was blown away or damaged allowing water to get in. During cross-examination, Linda testified to the following:

Q. All right. I'm guessing that what you're asking this jury to find is that the door is a wall and since it bulged or the stripping was gone water entered in and that's how come RVOS should pay?

9

A. Yes, sir.

Q. That's your position?

A. That's my position, yes, sir.

. . . .

Q. Also, ma'am, I asked you -- I didn't ask you. Mr. Bowersox, the attorney talking to you in your deposition, asked you to give him some definitions. Do you remember that?

A. Yes, sir.

Q. We asked you to define door and wall.

A. Yes.

Q. Do you recall what your definition to door was or can you just give us the definition of a door?

A. The definition of a door to me is a wall with an opening.

Q. Okay. What's the definition of a wall?

A. A wall is just a solid structure.

. . . .

Q. Ma'am, looking at the insurance policy, Exhibit Number 8 -- you may have it there still.

A. Yes, sir.

Q. You heard we're talking about plain language use of words, right?

A. Yes, sir.

10

Q. All right. I don't mean this other than a legitimate question. Okay?

A. Yes, sir.

Q. A roof is a roof?

A. Right.

Q. Wall is a wall?

A. Right.

Q. Window is a window, correct?

A. Correct.

Q. Door is a door?

A. Correct.

Q. The language of this policy states that if the force of wind and rain makes an opening in a roof or a wall, correct?

A. Yes.

Q. It doesn't say door?

A. Right.

Q. Doesn't say window?

A. Correct.

. . . .

Q. Now, it's your position -- and I'm just surmising. Nobody knows exactly, but it's your position that the French doors that were hung in

11

the back of that house either bulged or the weather stripping gave way to allow some water in, correct?

A. Yes.

Q. But that was definitely around the French doors?

A. Yes, sir.

Q. Not a wall?

A. Not a wall.

Q. And obviously not a roof?

A. Yes, sir.

Q. All right. And, of course, that's just using the plain language to read it?

A. Yes, sir.

James Iler (James) testified that his wife obtained the insurance policy on their home when it was built, that he agreed that the policy should be purchased, and that premiums were paid on the policy. According to James, he was not at the home during the hurricane because he, as a police officer with the Baytown Police Department, was required to stay in Baytown up to four days to provide patrol services during the storm. James testified that he ended up working two weeks before getting a day off, and it was after these two weeks that he first noticed the floors around the French doors buckling. James did not see any damage to the roof

12

or the windows, but when he opened the French doors he noticed the weather stripping "appeared to have been pushed in" toward the interior of the house. James testified that he and his wife hired Pelco to repair the floors. According to James, the Ilers were charged almost $31,000 for the repairs but, as of the time of trial, the Ilers had not paid Pelco for the repairs.

On cross-examination, James acknowledged that he understood that an exclusion is something that the insurance will not pay, and that the purchaser of the policy does not pay for the excluded coverage. He testified as follows:

Q. . . . . That exclusion [in part 8] states that basically the only time the insurance company that y'all contracted between each other would pay for wind driven rain, hurricane rain, is when there is an opening through a roof or a wall.

A. Correct.

Q. Obviously roof has nothing to do with your claim. There was no damage to the roof?

A. No.

. . . .

Q. Because your wife said that she was told I believe 120 mile-an-hour winds and the house was fine other than possibly the French doors or the weather stripping coming out, correct?

A. Correct.

Q. No windows were blown out?

13

A. No.

Q. Shingles weren't blown off? I think one of the pictures has a fire suppressor thing on top of the chimney. That wasn't blown off?

A. No.

Q. . . . Did you say it was at that time that you noticed the doors were open or were they shut? I may have misunderstood you.

A. The French doors?

Q. Correct.

A. It was closed.

Q. When you went two weeks later?

A. Yes.

Q. So, the doors were fine?

A. They were closed, yes.

Q. They weren't broken off the hinges?

A. No.

Q. Okay. And a wall is what?

A. A wall is a structure that could carry weight or not carry weight.

Q. Do you remember we asked you what your definition just as a lay person of what a wall is during your deposition?

A. I remember the question.

Q. Have you reviewed your deposition?

14

A. Yes.

Q. Recently?

A. Couple of days ago.

Q. Do you remember saying it's something that's solid and you cannot go through it?

A. Yes.

Q. That was your own definition?

A. Yes.

James further agreed on cross-examination that the exclusion at issue here specifically stated that an opening has to be made in a wall for coverage to exist, that his definition of a wall is something that you cannot walk through, and he agreed that you can walk through a door. On redirect examination, James agreed that a doorway is an opening in a wall, and that if you put a door in the way and the door is open, there is an opening in the wall, and that a doorway can be part of a wall.

Question Number 1 to the jury stated the following:

Did R.V.O.S. Farm Mutual Insurance Company ("RVOS") fail to comply with the insurance policy with respect to James C. Iler and Linda Iler's claim arising from Hurricane Ike?

You are instructed the policy does not cover losses caused by windstorm, hurricane or hail to the inside of a building or personal property contained in a building unless direct force of

15

> wind or hail makes an opening in the roof or wall and rain or snow enters through this opening and causes the damage.

The jury found that RVOS did not fail to comply with the insurance policy with respect to the Ilers' claim arising from Hurricane Ike. The trial court accepted the verdict, granted a take-nothing judgment in favor of RVOS, ordered that all taxable costs be taxed against the Ilers, and ordered that all other relief not specifically granted be denied. The Ilers filed a motion to disregard the jury's finding and for judgment notwithstanding the verdict, or in the alternative, a motion for new trial. RVOS filed a response, and the trial court denied the Ilers' motion.

Standard of Review and Applicable Law

In determining a question of insurance coverage, we look first to "the language of the policy because we presume parties intend what the words of their contract say." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). We give the policy's terms "their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense." *Id.* Since insurance policies are contracts, we construe them "according to general rules of contract construction to ascertain the parties' intent." *Id.*

"Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage." *Id.* at 133; *see also State Farm*

16

*Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995) ("Only if an insurance policy remains ambiguous despite these canons of interpretation should courts construe its language against the insurer in a manner that favors coverage."). "But an ambiguity does not exist simply because the parties interpret a policy differently." *Gilbert*, 327 S.W.3d at 133 (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)).

"Initially, the insured has the burden of establishing coverage under the terms of the policy." *Id.* at 124 (citing *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 782 (Tex. 2008)). To avoid liability, the insurer then has the burden to plead and prove that the loss falls within an exclusion to the policy's coverage. *Id.*; *see also* Tex. Ins. Code Ann. § 554.002 (West 2009) ("In a suit to recover under an insurance . . . contract, the insurer . . . has the burden of proof as to any avoidance or affirmative defense that the Texas Rules of Civil Procedure require to be affirmatively pleaded. Language of exclusion in the contract . . . constitutes an avoidance or an affirmative defense."); Tex. R. Civ. P. 94 ("Where the suit is on an insurance contract which insures against certain general hazards, but contains other provisions limiting such general liability, the party suing on such contract shall never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions specified in the contract, nor shall the insurer be

17

allowed to raise such issue unless it shall specifically allege that the loss was due to a risk or cause coming within a particular exception to the general liability . . . ."). "If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *Gilbert*, 327 S.W.3d at 124.

Submission to the Jury and Denial of JNOV

In their first appellate issue, the Ilers argue that their loss was covered as a matter of law and, therefore, the jury's answer to Question 1 was immaterial and should be disregarded. The Ilers contend on appeal that the interpretation of an unambiguous contract is a question of law for the court, and that the trial court "improperly submitted a question of law – what the exclusionary language of an insurance policy means – to the jury." According to their brief, the Ilers argue this Court should render judgment that their loss was covered under the policy, and that RVOS breached the insurance agreement as a matter of law. In their second issue, the Ilers argue the trial court erred in denying their motion for judgment notwithstanding the verdict because the Ilers conclusively established their damages and attorney's fees.

RVOS argues that the trial court had determined, prior to trial and based on the four corners of the contract, that the exclusion at issue was not ambiguous and

18

there was no conflict in the law, and that any conflict in the evidence the jury would decide. According to RVOS, the trial court determined that there was a question of fact for the jury as to whether or not the openings occurred from a hole in the roof or wall. RVOS also asserts that the trial court properly denied the Ilers' motion for judgment notwithstanding the verdict because the Ilers were not entitled to damages and attorney's fees as a matter of law absent an affirmative finding of liability.

According to the record before us, the trial court found, based on the four corners of the contract, that the exclusion was not ambiguous, there was no conflict in the law, and that any conflict in the evidence would be for the jury to decide. The trial court explained that it would be the task of the jury to weigh the evidence and then determine whether hurricane force wind blowing through the weather stripping created a hole or a gap in the wall. The jury charge included the trial court's instruction that, "If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition." We also note that although the Ilers on appeal argue that question one was improper because it was a question of law for the trial court, the Ilers did not object to the wording of the question at trial but offered an additional instruction to the question at the charge conference.

19

The Ilers contend that the issue submitted in jury question one was a question of law that should not have been submitted to the jury but should have been determined by the trial court. We disagree. While it is true that the jury should not be called upon to construe the legal effect of an instrument, *see Knutson v. Ripson*, 354 S.W.2d 575, 576 (Tex. 1962), the submission of a jury question is not error where the wording in the question does nothing more than present a question to the jurors based upon the facts. *See Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 780 S.W.2d 417, 419-21 (Tex. App. Texarkana 1989), *aff'd*, 811 S.W.2d 552 (Tex. 1991). In the present case, the trial court determined that the relevant contract terms were not ambiguous. The trial court did not provide any specific definitions for the words in the exclusion, and it instructed the jury to give the words their ordinary meaning. The trial court couched jury question one in the terms of the policy and did not ask the jury to construe the parties' obligations under the policy. *See id.* A reasonable jury could have found that RVOS did not fail to comply with the policy with respect to the Ilers' claim. Issue one is overruled. Because we have concluded that question one was a proper question for the jury and that ample evidence supported the jury's answer, we also overrule issue two.

The Ilers' Proposed Instruction Refused by the Trial Court

In issue three, the Ilers argue in the alternative that their proposed instruction refused by the trial court was proper, was supported by the pleadings and the evidence, and would have assisted the jury. According to the Ilers, "[i]f the jury had received the proffered instruction, the jury likely would have correctly found that RVOS failed to comply [with] the insurance policy when it refused to cover the Ilers' loss[.]" RVOS contends that the proposed instruction "was a blatant comment on the weight of the evidence[]" and was improper.

We review the decision of whether to submit a particular instruction for an abuse of discretion. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006); *Hamid v. Lexus*, 369 S.W.3d 291, 295 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003). "The essential inquiry is whether the instruction or definition aids the jury in answering the questions." *Hamid*, 369 S.W.3d at 295. A court has wide latitude to determine the sufficiency of explanatory instructions and definitions. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 791 (Tex. 1995).

An instruction is proper if it assists the jury, is supported by the pleadings or evidence, and accurately states the law. *Union Pac. R.R. Co. v. Williams*, 85

21

S.W.3d 162, 166 (Tex. 2002). A jury instruction is improper if it comments on the weight of the evidence or "nudge[s]" or "tilt[s]" the jury. *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 724 (Tex. 2003); *Hamid*, 369 S.W.3d at 295.

Rule 277 provides in relevant part as follows:

> The court shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of their answers, but the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence or advises the jury of the effect of their answers when it is properly a part of an instruction or definition.

Tex. R. Civ. P. 277. An impermissible comment on the weight of the evidence occurs when, in light of the entire charge, the judge has "assumed the truth of a material controverted fact or exaggerated, minimized, or [withdrawn] some pertinent evidence from the jury's consideration." *Tex. Mut. Ins. Co. v. Boetsch*, 307 S.W.3d 874, 879-80 (Tex. App.—Dallas 2010, pet. denied). An instruction is also an improper comment on the weight of the evidence if it suggests to the jury the trial judge's opinion concerning the matter about which the jury is asked. *Id.* at 880.

Question number one proposed by the Ilers was identical to question number one presented in the charge to the jury except that the Ilers requested the following additional instruction:

> You are further instructed that an opening between or through a door and its frame or threshold, between two doors, and between or through a window and its frame created by direct force of wind or hail through which rain or snow enters and causes damages is a covered loss under the policy.

At the charge conference, counsel for the Ilers argued that "[t]he plaintiffs request that this instruction be added because the interpretation – the conflicting interpretations and the exclusionary provision we believe are a question of law for the court and not a matter for the jury." The trial court refused the additional instruction requested by the Ilers.

The proffered instruction instructed the jury how to construe the relevant contract terms. Because the relevant words in the insurance policy were to be given their ordinary meaning, as the jury was instructed, the instruction was correctly refused. Additionally, the requested would have constituted "nudging" and an improper comment on the weight of the evidence. *See Johnson*, 106 S.W.3d at 724; *Hamid*, 369 S.W.3d at 295. Issue three is overruled. We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

23

Submitted on March 23, 2017
Opinion Delivered November 16, 2017

Before McKeithen, C.J., Kreger and Johnson, JJ.