

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00175-CV

STATE FARM LLOYDS, APPELLANT

V.

ROBERT MACKEEN AND REBECCA MACKEEN, APPELLEES

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 102404A, Honorable Dan L. Schaap, Presiding

May 17, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellees Robert and Rebecca MacKeen sued their homeowners insurance carrier, appellant State Farm Lloyds, for claims of breach of contract and unfair settlement practices under the Texas Insurance Code.[1]  The case was tried by jury; the verdict and the judgment of the trial court were for the MacKeens.  State Farm appealed, presenting

---

[1] See TEX. INS. CODE ANN. § 541.060 (West 2009).

three issues. Finding error in the jury charge that was not harmless, we will reverse the judgment of the trial court and remand the case for a new trial.

## Background

The MacKeens' property lies outside Amarillo in Potter County. Improvements include their residence, a separate rent house, a barn, and storage buildings. These structures sustained wind and hail damage during a May 2013 storm. The roof of a shed where the MacKeens stored items of personal property was blown off, exposing the contents to damage.

The State Farm homeowners policy in effect at the time of the storm provided Coverage A for the dwelling up to $268,000 and dwelling extensions[2] up to $53,000. Coverage B under the policy insured personal property losses up to $201,000. Within a day or two of the storm the MacKeens notified State Farm of their damages.

State Farm adjusted the claim, finding the amount payable for damage to the residence and extensions was less than the MacKeens' $13,400 deductible. State Farm accordingly made no Coverage A payment. The MacKeens claimed losses of personal property under coverage B.

In September 2013, the MacKeens submitted to State Farm a nine-page estimate of personal property items they valued at some $52,000. In late October, at the MacKeens' request, State Farm sent a second adjuster to inspect the property. This inspection was interrupted by confrontation between the adjuster and a roofing contractor

---

[2] Defined in the policy as "other structures on the residence premises, separated from the dwelling by clear space."

2

brought in by the MacKeens, and ended after Mr. MacKeen asked the adjuster to leave. The parties disagree who was responsible for the confrontation. Some two days later the MacKeens' attorney instructed State Farm in writing to cease all communications with his clients.

In April 2014, the MacKeens filed suit against State Farm and one of its adjusters alleging breach of the insurance policy, knowing violations of the Insurance Code, breach of the duty of good faith and fair dealing, gross negligence, and fraud. The MacKeens later nonsuited their claims against the adjuster and the common law torts alleged against State Farm.

In 2016, State Farm tendered the MacKeens $18,424.83 for the depreciated value of all items on their personal property loss inventory. To that total it added 18% interest required by Chapter 542 of the Texas Insurance Code. State Farm also tendered the MacKeens $864.50 for a temporary electrical repair made on the night of the storm. It added 18% interest to this amount.

The case was tried over a week in November 2016. The MacKeens' evidence presented State Farm's untimely payments for personal property and the temporary repair as breaches of the insurance policy as well as violations of the Insurance Code. But they sought no breach-of-contract damages with respect to those items. The alleged policy breach in dispute, the issue on which the parties presented conflicting evidence, was whether State Farm had paid all benefits owed under the policy for damage to the residence and other structures. The contract damages question submitted to the jury

3

asked only for findings on the replacement cost values of the dwelling and dwelling extensions.

To that end, the MacKeens presented a forensic engineer-architect who testified to his opinion the cause of damage to the residence and outbuildings was the May 2013 storm. He testified the roofs of the residence and the rent house required replacement and the storage shed would have to be rebuilt. The MacKeens also presented an estimator in whose opinion the cost to replace the roof and fence and make interior and exterior repairs to the residence would exceed $56,000. He further said more than $10,000 would be necessary to replace the roof and fence and make repairs to the rent house and over $29,000 to replace the roof of the storage shed and repair the other outbuildings.

State Farm presented a local roofing contractor and an engineer. The roofing contractor described the roof of the residence as "older" with damage that preceded the storm. He found storm-produced wind damage which he said could be repaired. As for the rent house, he found no wind or hail damage. On the corrugated metal roofs of the remaining outbuildings, other than the storage shed whose roof was blown off, he found no storm-produced damage. The contractor generally agreed with State Farm's repair estimate for the residence. The engineer also found the roof of the residence did not require replacement but could be repaired. On the rent house, he found no wind or hail damage. He also inspected the roofs of the outbuildings. His testimony indicated none of the roofs, other than the storage shed roof, required replacement.

The jury charge included the following relevant questions, definitions, and instructions:

> *You are instructed that the Court has found that State Farm Lloyds failed to comply with the Homeowners Policy.*  [Italics in original]

### QUESTION NUMBER 1

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate the MacKeens for State Farm Lloyds [sic] failure to comply with the Homeowners Policy?

> Consider the following elements of damages, if any, and none other.
>
> In answering these subparts, you are to consider only the Replacement Cost Value (RCV) of the Dwelling and Dwelling Extensions (under Coverage A of the Homeowner's Insurance Policy), except as it relate to wood fences.  "Replacement Cost Value" is defined as the reasonable and necessary costs to replace or repair the damaged property with similar construction and for the same use.
>
> * * *

Answer separately in dollars and cents for damages, if any.

> a. Damages to the Dwelling:
>
> > Answer: $_____
>
> b. Damages to the Dwelling Extensions:
>
> > Answer: $_____

### QUESTION NUMBER 2

Did State Farm Lloyds engage in any unfair or deceptive act or practice that was the producing cause of damages to the MacKeens?

"Producing cause" means a cause that was a substantial factor in bringing about the damages, if any, and without which the damages would not have occurred.  There may be more than one producing cause.

"Unfair or deceptive act or practice" means any one or more of the following:

> 1) Misrepresenting to a claimant a material fact or policy provision relating to coverage at issue; or

2) Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when the insurer's liability has become reasonably clear; or

3) Failing to provide promptly to the MacKeens a reasonable explanation of the factual and legal basis in the policy for State Farm Lloyds' denial of the claim; or

4) Refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

Answer "Yes" or "No."

Answer: _____

*If you have answered "Yes" to Question No. 2 then answer this question. Otherwise, do not answer this question.* [Italics in original]

## QUESTION NUMBER 3

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate the MacKeens for their damages, if any, that were caused by such unfair or deceptive act or practice?

Consider the following elements of damages, if any, and none other.

In answering these subparts, you are to consider only the Replacement Cost Value (RCV) of the Dwelling and Dwelling Extensions (under Coverage A of the Homeowner's Insurance Policy), except as it relate to wood fences.

"Replacement Cost Value" is defined as the reasonable and necessary costs to replace or repair the damaged property with similar construction and for the same use.

* * *

Answer separately in dollars and cents for damages, if any.

a. Damages to the Dwelling:

Answer: $_____

b. Damages to the Dwelling Extensions:

Answer: $_____

Ten members of the jury answered question one with damage findings of $25,000

for the dwelling and $30,000 for its extensions. In response to questions two, three, four,

6

and five the jury found State Farm knowingly engaged in an unfair or deceptive act or practice resulting in actual damages to the MacKeens of $25,000 for their dwelling and $30,000 for its extensions and because State Farm acted knowingly, the MacKeens were due $50,000 in additional damages. Finally, the jury awarded the MacKeens attorney's fees of $220,000 through trial with conditional awards for direct appeal of $75,000 and $50,000 if petition for review by the Texas Supreme Court is sought and an additional $50,000 if petition for review is granted. The trial court rendered judgment for the MacKeens on their extra-contractual claim, with additional damages, and attorney's fees. State Farm's motion for new trial was overruled by order.

## Analysis

We begin with State Farm's issue 1.B. because it is dispositive of the appeal. The instruction "that the Court has found that State Farm Lloyds failed to comply with the Homeowners Policy" appearing in the court's charge was given over the objections of State Farm. Through its issue 1.B., State Farm argues the trial court abused its discretion by including the instruction because it was an improper comment on the weight of the evidence.

A trial court's decision to submit an instruction is reviewed for abuse of discretion. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006); *Hamid v. Lexus,* 369 S.W.3d 291, 295 (Tex. App.—Houston [1st Dist.] 2011, no pet.)*.* A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

An instruction is proper if it assists the jury, is supported by the pleadings or evidence, and accurately states the law. *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002). "The essential inquiry is whether the instruction or definition aids the jury in answering the questions." *Hamid*, 369 S.W.3d at 295.

A trial court makes a "direct comment on the weight of the evidence" if it submits an issue "suggest[ing] to the jury the trial court's opinion on the matter." *H.E. Butt Grocery Co. v. Bilotto,* 985 S.W.2d 22, 24 (Tex. 1998). An instruction must not "indicate the opinion of the trial judge as to the verity or accuracy of the facts in inquiry." *McDonald Transit, Inc. v. Moore,* 565 S.W.2d 43, 45 (Tex. 1978). "An impermissible comment on the weight of the evidence occurs when, after examining the entire charge, it is determined that the judge assumed the truth of a material controverted fact or exaggerated, minimized, or withdrew some pertinent evidence from the jury's consideration." *Tex. Mut. Ins. Co. v. Boetsch,* 307 S.W.3d 874, 879-80 (Tex. App.—Dallas 2010, pet. denied); *Hamid*, 369 S.W.3d at 295; TEX. R. CIV. P. 277 ("The court shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of their answers . . . ."); *see also First National Bank of Amarillo v. Jarnigan,* 794 S.W.2d 54, 62-63 (Tex. App.—Amarillo 1990, writ denied) (finding the trial court's instruction that legal documents constituted a single transaction was an impermissible comment on the weight of the evidence because the matter was one of disputed fact, and the error was not harmless).

The record makes clear that the trial court was led to instruct the jury regarding State Farm's failure to comply with the policy by the undisputed evidence it did not timely pay for losses to the personal property and the temporary electrical repair. At a point

during discussion among counsel and the court, the court stated its intention "to basically instruct a verdict that State Farm has, in fact, violated the insurance contract by its failures that were admitted during the course of trial. . . . So I'm going to find as a matter of law that State Farm has violated or failed to comply with the homeowners policy and I am going to enter an instructed verdict in that regard on the issue of liability."[3]

The trial court did not find as a matter of law State Farm breached Coverage A with respect to damage to the dwelling and extensions, nor could it make such a finding on the conflicting evidence presented. *See Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex. 1978) (stating "the plaintiff is entitled to a directed verdict when reasonable minds can draw only one conclusion from the evidence"). But neither did it submit a breach-of-contract liability question. Rather, through its "State Farm failed to comply" instruction, it informed the jury it had resolved all liability issues for breach of the policy against State Farm.[4] We are unable to see how the instruction aided the jury to answer the questions submitted. *Hamid*, 369 S.W.3d at 295. Moreover, we agree with State Farm that it improperly commented on the weight of the evidence. *Bilotto,* 985 S.W.2d at 24; *see* 34 Nancy Saint-Paul, THE JURY CHARGE IN TEXAS CIVIL LITIGATION: TEXAS PRACTICE SERIES

---

[3] The discussion occurred during the court's rulings on a series of motions for directed verdict the MacKeens presented. On the breach-of-contract allegations, the trial court granted the MacKeens' motion "for directed verdict on their claim against State Farm Lloyds for breach of contract as it relates to their claims for personal property damage under Coverage B of the homeowners policy." It granted their similar motion on the MacKeens' claim "for their electrical repair under Coverage A" of the policy.

[4] It is clear the trial court was of the opinion that State Farm's acknowledged failures to timely pay the MacKeens' claims for personal property losses and temporary electrical repairs left the amount of damages as the only disputed issue in their claim for breach of the policy with respect to Coverage A liability for the damage to the residence and outbuildings. On appeal, the MacKeens cite no authority supporting that premise.

§ 3.22 at 75 (2019 ed.) ("[t]he instructions in the jury charge ordinarily may not advise the jury that a fact issue has been conclusively established as a matter of law since that instruction might unduly influence the jury's answers about the other facts in the case"). The court's instruction that State Farm failed to comply with the policy manifestly suggested to the jury that State Farm's failure encompassed its obligation to pay policy benefits under Coverage A, thereby suggesting the opinion of the trial court favoring the MacKeens' evidence on the cost of repair or replacement over that presented by State Farm. *McDonald Transit,* 565 S.W.2d at 45; *see Redwine v. AAA Life Ins. Co.*, 852 S.W.2d 10, 14 (Tex. App.—Dallas 1993, no writ) (finding jury instructions constituted comments on weight of evidence; discussing cases). We conclude the trial court abused its discretion by instructing the jury that State Farm failed to comply with the policy.

Reversible error occurs if the error probably caused rendition of an improper judgment or probably prevented the appellant from properly presenting its case on appeal. TEX. R. APP. P. 44.1(a); *Romero v. KPH Consolidation, Inc.,* 166 S.W.3d 212, 225 (Tex. 2005). "Charge error is generally considered harmful if it relates to a contested, critical issue." *Transcon. Ins. Co. v. Crump,* 330 S.W.3d 211, 221 (Tex. 2010) (quoting *Columbia Rio Grande Healthcare, L.P. v. Hawley,* 284 S.W.3d 851, 856 (Tex. 2009)); *Interconex, Inc. v. Ugarov,* 224 S.W.3d 523, 543 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (trial court's comments to jury and submission of question that stated a disputed fact as undisputed probably caused rendition of improper judgment). Unless the appellate court is reasonably certain that the jury was not significantly influenced by issues erroneously submitted to it, the error is reversible. *Romero,* 166 S.W.3d at 227-28; *Matlock Place Apartments, L.P. v. Druce,* 369 S.W.3d 355, 383 (Tex. App.—Fort Worth

10

2012, pet. denied). Here the error directly related to State Farm's liability under the policy for Coverage A benefits, a contested critical issue in the litigation. The same can be said for the impact of the "State Farm failed to comply" instruction on the jury's consideration of question three, which addressed the same damage elements as question one.

Moreover, we find the instruction suggested to the jury its response to question two, which asked whether State Farm committed an "unfair or deceptive act or practice." The definition of this term included four acts of conduct, some of which related to State Farm's duties under the policy. For example, following a loss the policy obligates State Farm to notify the insured in writing, within fifteen days of receiving requested information, whether the claim will be paid or denied and if the claim is denied provide the reasons. Likewise, the charge instructed the jury that an unfair or deceptive act or practice includes, "[f]ailing to provide promptly to the MacKeens a reasonable explanation of the factual and legal basis in the policy for State Farm Lloyd's denial of the claim[.]" By broadly instructing the jury of State Farm's failure to comply with the policy, the court suggested as well an affirmative answer to the issue presented in question two.

For all these reasons, we find the charge error was not harmless. State Farm's first issue is sustained.

## Conclusion

Because under the issues State Farm raised it would not be entitled to any greater relief than a new trial, analysis of its remaining issues is unnecessary to the disposition of the appeal. TEX. R. APP. P. 47.1.

The judgment of the trial court is reversed and the case remanded for a new trial.

TEX. R. APP. P. 43.2(d).

James T. Campbell
Justice